IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:14-CV-47-BO

| | |
|---|---|
| KWABENA OKOFO BOANSI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| JEH JOHNSON, Secretary, U.S. ) | |
| Department of Homeland Security, et al., ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for summary judgment. [DE 33, 40]. A hearing was held before the undersigned in Elizabeth City, North Carolina, on July 15, 2015, and the matter is ripe for ruling. For the following reasons, plaintiff's motion [DE 33] is GRANTED and defendant's motion [DE 40] is DENIED.

## BACKGROUND

Until the end of 2014, Dr. Kwabena Boansi, a citizen and national of Ghana, was a tenured political science professor at Elizabeth City State University (ECSU), who was in the United States on a non-immigrant employment visa. In 2012, ECSU filed an immigrant visa petition (Form I-40) which, if approved, would have conferred lawful permanent resident status on Dr. Boansi. Defendants denied the petition in 2014, after finding that Dr. Boansi's 1998 marriage to United States citizen Jacqueline Delores McNeil was fraudulent. Dr. Boansi's visa expired, and he returned to his native Ghana, where he currently resides.

Dr. Boansi first arrived in the United States in 1988 on a visitor visa. He changed to a student visa to study at the University of Delaware, where he remained until he earned his Ph.D. on January 15, 1998. While at the University of Delaware, he met Ms. McNeil, and they began a

1

romantic relationship. Ms. McNeil was raising her two children in Laurel, Maryland, and her elderly father was in a nursing home in Washington D.C.. The couple married on May 28, 1998, shortly after Dr. Boansi graduated. Though Dr. Boansi attempted to get a job at Delaware State University, near Ms. McNeil, he was unsuccessful. He did, however, obtain a teaching position at ECSU. Ms. McNeil did not want to uproot her children and move away from her ailing father, and Dr. Boansi did not want to stay permanently in Elizabeth City, thus the couple decided that Dr. Boansi would move to Elizabeth City, while Ms. McNeil would stay in Maryland, and they visited each other on weekends, holidays, and summers.

In 1998, Ms. McNeil filed an I-130 immigrant visa petition on behalf of Dr. Boansi as an "immediate relative." Dr. Boansi simultaneously filed an I-485 application for adjustment of status to be considered for lawful permanent residency. Thus began the couple's foray into the United States Citizenship and Immigration Services (USCIS) system. Over the next six years, defendants interviewed the couple three times, asking each spouse a total of 48 questions about their marriage. The couple gave consistent answers to 43 of those questions, which included questions about medications, most recent dates, and décor of the family residence.

Over the entire six years and three interviews, there were five purportedly inconsistent responses. To the question "Are the rooms carpeted, if so, what color is the carpet?," Dr. Boansi responded "hardwood floor" while MS. McNeil responded "2 bedrooms carpet-wall to wall rose color." In response to being asked when the last time the couple went out some place, Dr. Boansi responded "last interview had early dinner," and Ms. McNeil replied "Midterm- Oct. dinner." When asked who does the cooking, Dr. Boansi said they both did, while Ms. McNeil responded "me and sometimes we go to restaurant." Another purportedly inconsistent response was in

2

response to a question regarding the number of locks are on the front door. Both said two in Elizabeth City, but Dr. Boansi said one in Maryland, while Ms. McNeil said two in Maryland.

In support of their applications, the couple provided wedding pictures, affidavits from people with personal knowledge of their relationship, statements from their joint bank accounts, copies of lease agreements each signed by both spouses for their homes in Maryland and North Carolina, and a copy of Dr. Boansi's life insurance policy listing Ms. McNeil as the beneficiary to the government. They were upfront about the fact that they lived in separate states and explained the reason for the living arrangement. Nevertheless, the first interviewer summarily concluded that the marriage appeared to be one of convenience that the two had no common interests and that there was no "real rapport." He did not discuss the evidence the couple brought to the interview or the explanation for the living arrangement. The second interviewer told the couple that his supervisor did not like issuing green cards to couples who were not living together and concluded the interview without a decision. The third interviewer concluded, with little explanation, that Dr. Boansi was trying to "beat the system" by interviewing in North Carolina and recommended denial.

After six years of marriage, Ms. McNeil and Dr. Boansi permanently separated in 2004, and Dr. Boansi withdrew his I-485. Their divorce was finalized on June 3, 2005. Defendants denied Ms. McNeal's I-130 on April 20, 2005, finding that the couple entered into a sham marriage intended to circumvent immigration laws. This 2005 decision relied on the "conflicting responses" from the third interviews, discrepancies in the answers from the first interviews, and the first interviewer's conclusion that the couple showed little rapport. Neither Ms. McNeil nor Dr. Boansi received a copy of this denial.

3

Beginning in 2006, ECSU filed three employment-based immigration visa petitions which would have made Dr. Boansi eligible for permanent resident status: one in 2006, one in 2011, and one in 2012. All three were denied based on 8 U.S.C. § 1154(c), which prohibits approval of subsequent applications where there has been a finding of marriage fraud. Defendants did not analyze the items and evidence Dr. Boansi and ECSU submitted, but merely relied on their prior decisions, specifically the 2005 decision, in support of the denials. The denial of the 2012 petition, which is the subject of this lawsuit, stated that there were discrepancies and inconsistencies with the couple's answers to interview questions, but listed as an example only the fact that the couple did not live together at the time of the interviews. In support of the 2012 application, Dr. Boansi submitted additional evidence, including an affidavit of Ms. McNeil attesting to the bona fides of her relationship, an affidavit of a friend who had a part in introducing the couple and knew their pre-marital courtship, bills, and credit card statements. The decision acknowledged that rebuttal evidence existed, but did not discuss the documents or the level of weight to which they were entitled. In response to the denial of the 2012 petition, Dr. Boansi filed this action alleging that defendants violated the Administrative Procedures Act in adjudicating ECSU's 2012 petition.

## ANALYSIS

I. <u>Legal Standards</u>

Both parties have moved for summary judgment. Summary judgment is proper only when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001). An issue is "genuine" if a reasonable jury, based on the evidence,

4

could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cox*, 249 F.3d at 299. When addressing cross-motions for summary judgment, the court must ask "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251.

When a United States citizen marries a non-citizen, the couple can petition the government to recognize the non-citizen as a legal permanent resident. *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154, and 1255(a). If the couple fails to persuade the government that their marriage is bona fide, however, the petition will be denied. *Matter of Brantigan*, 11 I & N Dec. 493, 497 (BIA 1966). A finding that the marriage is not bona fide does not preclude approval of a subsequently-filed petition. If, however, a non-citizen is determined to have previously entered into a "sham marriage' for the purpose of evading immigration laws, approval of a subsequent visa petition is prohibited. 8 U.S.C. § 1154(c).

To find a marriage fraudulent, the government must identify "substantial and probative" evidence that the marriage was a sham from the beginning. *Matter of Tawfik*, 20 I & N Dec. 166, 170 (BIA 1990). The burden is on the government and there must be affirmative evidence that creates more than a "reasonable inference" of fraud. *Id.* at 167–68. It follows then, that a finding of fraud requires more than a finding that the couple failed to prove that their marriage is bona fide. *Id.* at 167–68; *see also Sing v. United States*, 461 F.3d 290, 294 n.3 (2d Cir. 2006); *Smolniakova v. Gonzales*, 422 F.3d 1037, 1053–54 (9th Cir. 2005). If the government finds substantial and probative evidence that a marriage is fraudulent, the burden shifts to the couple to demonstrate otherwise. *Matter of Kahy*, 19 I & N Dec. 803, 806–07 (BIA 1988).

Under the Administrative Procedure Act, the district court's review is limited to the administrative record. 5 U.S.C. § 706; *Krichbaum v. Kelley*, 844 F.Supp. 1107, 1110 (W.D.Va. 1994), *aff'd*, 61 F.3d 900 (4th Cir. 1995). "The reasons provided by the agency are the only basis on which the agency's actions may be upheld." *McDaniels v. United States*, 300 F.3d 407, 413 (4th Cir. 2002). A court may set aside defendants' denial of the visa petition only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or whether the agency undertook action "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D). Arbitrary and capricious agency action can occur where the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). "[S]o long as a reasonable mind could find adequate support for the decision, it must stand." *Ogbolumani v. Napolitano*, 557 F.3d 729, 733 (7th Cir. 2009). Accordingly, if no reasonable mind could find that the record contained "substantial and probative evidence" that Dr. Boansi's marriage to Ms. McNeil was a sham, the government's decision was arbitrary and capricious.

II. <u>Substantial and Probative Evidence of Fraud</u>

Case law illustrates what constitutes "substantial and probative evidence" of marriage fraud. In *Oddo v. Reno*, 175 F.3d 1015, 1999 WL 170173 (4th Cir. 1999) (unpublished), the citizen husband admitted the marriage was entered into for the purpose of evading immigration laws. *Id.* at *3; *see also Aioub v. Mukasey*, 540 F.3d 609, 610–11 (7th Cir. 2008). As another example, in *Okolie v. Collett*, No. GLR-12-663 , 2012 WL 5363472 (D. Md. Oct. 26, 2012), plaintiff's first wife submitted an affidavit stating that she married the plaintiff in exchange for

money so that he could obtain a green card. *Id.* at *1; *see also Matter of Kahy*, 19 I & N Dec. 803, 806–07 (BIA 1988). Affirmative evidence that the marriage is fraudulent is not necessarily required; a court found a marriage fraudulent where, *inter alia*, the couple lived apart, provided contradictory answers regarding where and when plaintiff proposed to his wife, and could not state the full names of each other's children. *Asamoah v. Napolitano*, No. RDB 10-CV-470, 2010 WL 5095353 at *4 (D.Md. Dec. 8, 2010). It is clear, however, that where two equally plausible explanations—one of fraud, and one of legitimate marriage—are possible, the government must have affirmative evidence to demonstrate that the marriage was fraudulent. It cannot merely rely on inferences and assumptions.

Here, the government heavily relies on the fact that the couple did not live together as affirmative evidence that the marriage was a sham. Although parties who do not reside together may be held to a higher standard, *Matter of Phillis*, 51 I & N Dec. 385, 387 (BIA 1975), "where the parties enter into a valid marriage, and there is nothing to show that they have since obtained a legal separation or dissolution of that marriage, a visa petition filed on behalf of the alien spouse should not be denied solely because the parties are not residing together," *Matter of Lenning*, 17 I & N Dec. 476, 477 (BIA 1980). Moreover, *Phillis* is readily distinguishable from the instant case, and it, in fact, provides support for Dr. Boansi's argument.

In *Phillis*, the citizen spouse first claimed that the couple had been living together and then later admitted that he lied and that they had never lived together. *Phillis*, 15 I & N Dec. at 387. Despite this evidence of deceit, the petition was denied "without prejudice to submission of a new visa petition." *Id.* As one other court has noted, "*Phillis* did not find fraud by substantial and probative evidence, permanently barring the non-citizen from ever obtaining immigration benefits through marriage." *Delcore v. Holder*, No. 13-CV-8266, 2015 WL 1858363 at *7

7

(N.D.Ill. Apr. 20, 2015). Here, however, the government relies on *Phillis* to support its argument for a permanent bar on immigration benefits. The government's argument is particularly unavailing given that the evidence in the instant case is less indicative of fraud than in *Phillis*, as Dr. Boansi and Ms. McNeal readily admitted that they did not live together.

Defendants paid little attention to the couple's rationale for living apart or any other evidence submitted in support of the couple's legitimate marriage. The government pointed to no affirmative evidence similar to the cases cited above in which the court found marriage fraud. Moreover, Dr. Boansi and Ms. McNeil answered virtually all of the questions about their relationship consistently, and their purportedly inconsistent answers were nowhere near as egregious as those cited in *Asamoah*. In fact, it is hard to consider the inconsistencies at all indicative of fraud—they barely seem inconsistent, particularly in light of the overwhelming number of consistent responses.

At its essence, this case is about the government denying Dr. Boansi's applications because he and his wife had an unusual living arrangement. The government's findings rest on insinuation and inference, rather than substantial and probative evidence that the couple engaged in marriage fraud. In light of the government's burden, no reasonable person could reach the conclusion reached by the government in this case.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment [DE 33] is GRANTED and defendants' motion [DE 40] is DENIED. The case is remanded to the Department of Homeland Security, United States Citizenship and Immigration Services, for re-adjudication of plaintiff's petition without application of the 8 U.S.C. § 1154(c) marriage fraud bar.

SO ORDERED, this 20 day of July, 2015.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE